**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Katherine E. Cline, et al. | ) | CASE NO. 1:04-CV-02079 |
| | ) | |
| Plaintiffs, | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| vs. | ) | MAGISTRATE JUDGE VECCHIARELLI |
| | ) | |
| Reliance Trust Company, | ) | |
| | ) | **ORDER** |
| Defendant. | ) | |

On July 20, 2005, Plaintiffs served a third party, Womble Carlyle Sandridge & Rice

P.L.L.C. ("Womble Carlyle"), with a subpoena *duces tecum* requesting documents related to a

December 10, 1998 Memorandum ("Memorandum") that it prepared on behalf of Defendant

Reliance Trust Company ("RTC").[1]  Womble Carlyle, however, declined to comply with the

request for related documents citing attorney-client privilege, as the firm has a continuing

attorney-client relationship with RTC.  At the Court's behest, Plaintiffs filed a letter with the

Court on August 11, 2005 detailing the alleged scope of the waiver and the temporal limitations

of their document requests.  Subsequently, both RTC and Womble Carlyle (collectively the

---

[1] The July 20, 2005 subpoena served on Womble Carlyle, a Georgia resident, was issued
from the Northern District of Ohio.

"movants") filed separate motions for a protective order on August 25, 2005.[2] (Doc. Nos. 49 &
52).  On September 1, 2005, Plaintiffs filed a Brief In Opposition to the motions filed by RTC
and Womble Carlyle.  Both RTC and Womble Carlyle filed reply briefs.  On September 16,
2005, the Court ordered RTC and/or Womble Carlyle to compile a Privilege Log of all
documents pertaining to responses to the Memorandum received by RTC from third persons and
pertaining to legal advice and communications between RTC and Womble Carlyle in connection
with these responses.  These documents were delivered to the Court for *in camera* inspection.
For the reasons set forth in detail below, the Motions For Protective Order (Doc. Nos. 49 & 52)
filed by RTC and Womble Carlyle are GRANTED in part and DENIED in part.

Womble Carlyle shall produce to Plaintiffs all documents submitted in the Privilege Log.
(WCSR 000001-000145).  The documents in the Privilege Log fall into one of three categories:
(1) communications soliciting the legal advice that resulted in the drafting of the Memorandum;
(2) other versions of the Memorandum; and (3) communications between RTC and Womble
Carlyle addressing legal concerns raised in the Memorandum and prompted by the responses
received from third persons to whom the Memorandum was disclosed.  The Court finds that all
three of these categories fall within the scope of the same subject matter waiver that resulted
from RTC's disclosure of the Memorandum to third persons.

## I.  Background

This action was originally filed in the Court of Common Pleas, Cuyahoga County, Ohio
as CV-04-537063 on July 27, 2004.  Plaintiffs alleged that they were entitled to "remedies under

---

[2] RTC's motion was alternatively titled as a motion to quash subpoena made pursuant to
Fed. Civ. R. 45(c)(3)(A)(iii).

the Ohio Corrupt Practices Act, Ohio Revised Code § 2923.31, et seq., Ohio Securities laws,

certified at Ohio Revised Code § 1707 et seq., and the common law of the State of Ohio to

recover damages arising from Defendants' wrongful conduct." (First Amend. Compl. ¶1).

Plaintiffs' claims arise from the involvement of Defendant RTC in an alleged Ponzi scheme

concocted and led by non-party ETS Payphones, Inc. ("ETS").  Plaintiffs allege that they

transferred their Individual Retirement Accounts ("IRA") to RTC, which then purchased

unsuited assets for their accounts, specifically Customer-Owned Coin-Operated Telephone

("COCOT") accounts from ETS.  On October 14, 2004, this action was removed to the United

States District Court for the Northern District of Ohio.  This case was referred to the undersigned

U.S. Magistrate Judge to handle all discovery-related matters. (Doc. No. 38).

The subpoena *duces tecum* Plaintiffs served upon Womble Carlyle requested documents

relating to the Memorandum prepared by Womble Carlyle.  The Memorandum was addressed to

Ed Lindsley [sic], Senior Vice President of Defendant RTC.  According to the Memorandum,

RTC requested Womble Carlyle to review agreements concerning RTC's transactions with ETS

to determine the "appropriateness" of RTC's involvement with the COCOT accounts.  The

Memorandum discussed the subject of RTC's potential liability for participating in transactions

with ETS, concluded that RTC "possibly" could be held liable, and revealed the possibility that

the ETS investments could be considered a security.

Subsequent to receipt of the Memorandum, Edward S. Linsley of RTC forwarded copies

of the Memorandum to third persons.  Plaintiffs argue that the disclosure of the Memorandum,

which contained privileged information, waives any privilege in the Memorandum itself and also

entitles them to discover all documents transmitted between RTC and Womble concerning the

3

subject matter of the Memorandum.  Specifically, Plaintiffs have requested the following

documents:

> All communications between Womble Carlyle and RTC occurring in 1998, 1999
> and 2000 which pertain to "the appropriateness of the involvement of Reliance
> with COCOT accounts." (Doc. No. 48).

Womble Carlyle, a law firm representing RTC for many years even prior to the date of

the Memorandum, has refused to produce the documents requested in the subpoena on the

grounds of attorney-client privilege.  RTC and Womble Carlyle aver that attorney-client

privilege has been waived with respect to the Memorandum only.  The scope of the alleged

waiver is the issue in dispute.

## II.  Analysis

### A.  Applicable Attorney-Client Privilege Law

Pursuant to Fed. R. Evid. 501 ("Rule 501"),  "in civil actions and proceedings, with

respect to an element of a claim or defense as to which State law supplies the rule of decision,

the privilege of a witness, person, government, State, or political subdivision thereof shall be

determined in accordance with State law."  The Advisory Committee Notes to Rule 501 provide

that "in diversity cases where the litigation in question turns on a substantive question of State

law, and is brought in the Federal courts because the parties reside in different States, the

committee believes it is clear that State rules of privilege should apply unless the proof is

directed at a claim or defense for which Federal law supplies the rule of decision."  *See, e.g.,*

*Travelers Cas. & Sur. Co. v. Excess Ins. Co.*, 197 F.R.D. 601, 602 (S.D. Ohio 2000) (holding

that in a diversity action "the state law of privilege governs defendant's claim of attorney-client

privilege."); *Samuelson v. Susen*, 576 F.2d 546, 549 (3rd Cir. 1978) ("Rule 501 requires a district

4

court exercising diversity jurisdiction to apply the law of privilege which would be applied by the courts of the state in which it sits.")

The present action is a diversity action, and the basis of Plaintiffs' claims are firmly grounded in the substantive law of Ohio, the forum state.  Therefore, this Court must apply Ohio's attorney-client privilege law to the resolution of this dispute.

**B.  Ohio's Attorney-Client Privilege Law**

As stated by the Ohio Supreme Court, attorney-client privilege "reaches far beyond a proscription against testimonial speech [and] ... protects against any dissemination of information obtained in the confidential relationship."  *See State ex rel. Leslie v. Ohio Hous. & Fin. Agency* , 824 N.E.2d 990, 105 Ohio St.3d 261, 2005-Ohio-1508 at ¶26 (Ohio 2005) *quoting Am. Motors Corp. v. Huffstutler*, 575 N.E.2d 116, 121, 61 Ohio St.3d 343, 348 (Ohio 1991). Ohio's attorney-client privilege laws can be found both in the Ohio Revised Code and in the common law of the state. *State ex rel. Leslie*, 2005-Ohio-1508 at ¶18 (Ohio attorney-privilege law  "is governed by statute, R.C. 2317.02(A), and in cases that are not addressed in R.C. 2317.02(A), by common law").

Pursuant to Ohio R.C. § 2317.02(A), an attorney shall not testify "concerning a communication made to the attorney by a client in that relation or the attorney's advice to a client, except that the attorney may testify by express consent of the client ... and except that, if the client voluntarily testifies ... the attorney may be compelled to testify on the same subject." The Ohio Supreme Court has held that the above statute "provides the exclusive means by which privileged communications directly between an attorney and a client can be waived." *Ohio v. McDermott*, 651 N.E.2d 985, 1995-Ohio-80, 72 Ohio St.3d 570 at the syllabus (Ohio 1995).  The

*McDermott* court expressly declined to add a "judicially created waiver" to the statutorily

created testimonial privilege. *Id*. at 574.  However,  R.C. § 2317.02(A) "by its very terms, is a

***mere testimonial privilege*** precluding an attorney from ***testifying*** about communications." *State*

*ex rel. Leslie*, 2005-Ohio-1508 at ¶18 (emphasis added).  The issue presented in this case is not

the testimonial aspect of attorney-client privilege, but rather the confidentiality of documents

between an attorney and a client that are responsive to the subpoena *duces tecum*.[3]  As the statute

only addresses the testimonial aspect of attorney client privilege, it is inapplicable to the present

dispute.  The issue of whether RTC's disclosure of the Memorandum amounts to a waiver of the

attorney-client privilege must be resolved under the common law rather than the statutory law of

Ohio.

## C.   "Same Subject Matter" Waiver

There is a waiver of the attorney-client privilege where a client makes a partial, voluntary

disclosure of a privileged document to a third party.  *See, e.g., Hollingsworth v. Time Warner*

*Cable*, 812 N.E.2d 976, 157 Ohio App.3d 539, 2004-Ohio-3130 at  ¶65.  Ohio case law is clear

that the waiver of privilege caused by such a disclosure also waives the privilege with respect to

materials relating to the same "subject matter" as the disclosed document. *Id*. (disclosure of

privileged information to a third party is "inconsistent with an assertion of attorney-client

privilege" and amounts to a waiver "with regard to communications on the same subject

matter."); *see also Kremer v. Cox*, 682 N.E.2d 1006, 1017, 114 Ohio App.3d 41, 58 (Ohio Ct.

App. 1996); *Mid-Am. Nat'l Bank & Trust Co. v. Cincinnati Ins. Co.*, 599 N.E.2d 699, 704, 74

---

[3]  RTC concedes that it has waived the privilege in regard to the Memorandum itself.
(RTC' s Memo. at 6).  Thus, this Court's analysis focuses on what other documents, if any,
remain privileged.

Ohio App.3d 481, 489 (Ohio Ct. App. 1991); *First Union Nat'l Bank v. Maenle*, 2005 Ohio App.

LEXIS 36721, 2005-Ohio-4021 at ¶38 (Ohio Ct. App. 2005); *In re Guardianship of Simmons*,

2003 Ohio App. LEXIS 4872, 2003-Ohio-5416 at ¶30 (Ohio Ct. App. 2003); *Ohio v. Willis*, No.

97-BA-27, 1998 Ohio App. LEXIS 6172 at \*13 (Ohio Ct. App. 1998).

It is undisputed that RTC's senior vice-president voluntarily disclosed the Memorandum

to third parties. (*See* Doc. No. 48 at 42-44).[4]  As a result, RTC has waived its privilege to the

Memorandum, and the Court must determine the scope of the ensuing waiver.  Although waiver

is not limited to the disclosed document or communication,  the "same subject matter" standard

should be "applied ***narrowly***, rather than expansively." *See Hollingsworth*, 2004-Ohio-3130 at

¶¶65-66 (finding that the trial court abused its discretion by denying discovery of documents

regarding the same subject matter as that contained in a privileged email that the client had

revealed to a third party) (emphasis added) *quoting Gomez v. Towne Bancorp*, 2000 U.S. Dist.

LEXIS 12060 at \*6 (N.D. Ohio 2000); *see also In re Guardianship of Simmons*, 2003-Ohio-5416

at ¶32 (a lawyer with durable power of attorney for his mother could not reassert attorney-client

privilege over his mother's finances after he previously disclosed such financial information to

his siblings).

**D.   Extent To Which RTC Waived Attorney-Client Privilege**

Plaintiffs aver that they are entitled to "all communications" between Womble Carlyle

---

[4]  Womble Carlyle and RTC emphasize that the disclosures made to third persons contained phrases such as "for your eyes only," "please do not distribute," or "confidential." The movants, however, have cited no applicable law supporting the proposition that disclosures accompanied by such phrases negates a waiver.  This lack of authority is in sharp contrast to case law that unequivocally states: "attorney-client privilege is waived where a client discloses communications with his or her attorney to a third party." *Hollingsworth*, 2004-Ohio-3130 at ¶65.

and RTC during a three year span pertaining to "the appropriateness of the involvement of

[RTC] with COCOT accounts."  While Plaintiffs' seek the most expansive waiver conceivable,

Womble Carlyle and RTC attempt to limit discovery to the Memorandum itself.[5]  The boundaries

of the "same subject matter" waiver lie somewhere between these two positions.  Unfortunately,

beyond the above cited cases, Ohio case law provides little guidance.  Therefore, the Court, as

reflected in other opinions within the Sixth Circuit, will be guided by fairness concerns in

determining the scope of the waiver.  *See, e.g., In re Grand Jury Proceedings October 12, 1995*,

78 F.3d 251 (6th Cir. 1996); *In re OM Group Sec. Litig.*, 226 F.R.D. 579, 590-591 (N.D. Ohio

2005).

 RTC asserts that it has not used nor plans to use the Memorandum for a tactical

advantage in the litigation.  Although a party's planned use of otherwise privileged information

as a sword or a shield may justify the finding of a broader waiver, the absence of such tactical

use does not necessarily require an unduly narrow finding as to the scope of the waiver. *See In re*

*OM Group*, 226 F.R.D. at 590-591 (finding that, "[t]he Court must consider, not only whether

there is a tactical benefit, but whether it is fair to uphold the privilege considering the nature of

the disclosure.").

 On September 16, 2005, the Court ordered Womble Carlyle and/or RTC to compile a

Privilege Log and to produce for *in camera* inspection "all documents relating to the

---

 [5] Plaintiffs also have argued that RTC's voluntary production of the Memorandum in
discovery entitles it to a broad subject matter waiver.  However, it appears that Plaintiffs were in
possession of the Memorandum before it was requested in discovery and even attached a copy of
the Memorandum to their discovery requests.  From the outset, RTC has admitted that the
confidentiality of the Memorandum has been waived.  It should not be punished for making a
good faith effort to comply with Plaintiffs' discovery requests.

Memorandum that were generated on or before [December 10, 1998]" and "all documents

pertaining to responses to the Memorandum received by RTC from ... third persons and

pertaining to legal advice and communications between RTC and Womble Carlyle in connection

with these responses." (Doc. No. 59).[6]  After review, the Court concludes these parameters, in

fact, establish the correct scope of the same subject matter waiver that resulted from RTC's

disclosure of the Memorandum.  The submitted documents fall into one of three categories: (1)

communications soliciting the legal advice that resulted in the drafting of the Memorandum; (2)

other versions of the Memorandum; and (3) communications between RTC and Womble Carlyle

addressing legal concerns raised in the Memorandum and prompted by the responses received

from third persons to whom the Memorandum was disclosed.  All three of these categories fall

within the scope of the same subject matter waiver.

As RTC deliberately and voluntarily disclosed the Memorandum, there is no fair

reason to protect documents connected to the creation of the Memorandum, such as RTC's letter

requesting Womble Carlyle to review and analyze the proposed COCOT transactions that

resulted in the drafting of the Memorandum, as well the attached documentation.  These

documents relate to the same subject matter of the disclosed Memorandum and are within the

scope of the waiver. (WCSR 000001-000064).  Furthermore, the Court finds that documents in

the Privilege Log between the ranges of WCSR 000065-000100 are all variations of the same

waived Memorandum and are, without question, discoverable.

The remaining documents produced for *in camera* inspection reveal that RTC

---

[6] The scope of the documents encompassed by the Court's Order reflected a tentative
and preliminary determination that said documents related to the same subject matter as the
Memorandum.

deliberately disclosed the Memorandum to third persons with the apparent intention of soliciting

responses or entering into a dialogue concerning the subject matter of the Memorandum.  RTC

transmitted these responses to Womble Carlyle, either to receive further input and advice from

the firm or to demonstrate that RTC was acting on the firm's earlier recommendations.  RTC, as

illustrated by its actions, chose to take the legal opinions contained within the Memorandum and

create a four-party discussion between ETS, ETS's attorneys, Womble Carlyle, and itself.  RTC

had transmitted to Womble Carlyle legal opinions received from ETS verbatim, which in turn

received those opinions from its own attorneys.  Considering the nature and purpose of RTC's

waiver of the initially privileged Memorandum, all remaining documents in the Privilege Log,

WCSR 000101-000145, relate to the same subject matter as the Memorandum and, therefore, fall

within the scope of the waiver.  Discovery of all documents contained in the Privilege Log is

consistent with the purpose, scope, and intention of RTC's disclosure of the privileged material.

The Court finds no fair reason to withhold discovery of these documents from Plaintiffs.[7]

Plaintiffs' subpoena sought a broader category of documents than that contained in the

Court ordered Privilege Log.  To require RTC and Womble Carlyle to produce *any* documents or

communications regarding the propriety of RTC's involvement with COCOT accounts – even

where such communications were not prompted by the disclosure of the Memorandum – would

be too deep an inroad into the protected confines of the attorney-client relationship; and, based

---

[7] The attachments to the letters from RTC to Womble Carlyle are merely forwarded
copies of documents and communications from third persons that are discoverable from RTC.
*See, e.g., Koller v. W. E. Plechaty Co.*, 6 Ohio Misc. 57, 59 (Ohio Misc. 1965) ("mere transfer of
an unprivileged document from the client to his attorney does not make it privileged").

on the facts before it, the Court can find no fair reason why such an expansive waiver should be applied.

### III.   Conclusion

For the foregoing reasons, RTC's and Womble Carlyle's motions for a protective order are GRANTED in part and DENIED in part.

Specifically, Womble Carlyle shall produce to Plaintiffs all documents listed in the Privilege Log and are not required to produce any other documents that are otherwise privileged.

IT IS SO ORDERED.

s/Nancy A. Vecchiarelli
U.S. Magistrate Judge

DATE: October 31, 2005