UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CLIFFORD E. HARDIN and MAXINE L. HARDIN, | ) ) | Case No.:     1:04 CV 02079 |
| | ) | |
| Plaintiffs | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| RELIANCE TRUST COMPANY, | ) | |
| | ) | |
| Defendant | ) | ORDER |

Plaintiffs Clifford and Maxine Hardin (hereinafter, "Plaintiffs" or "the Hardins") filed the

instant action on July 27, 2004, against Defendant Reliance Trust Company (hereinafter

"Defendant" or "RTC") alleging the following state law claims: (1) Illegal Sales of a Security; (2)

Civil Aiding and Abetting; (3) Civil Conspiracy; and (4) Fraudulent Concealment. (*See* Second Am.

Compl., ECF No. 21.)  Currently pending before the court are: (1) Plaintiffs' Motion for Partial

Summary Judgment (ECF No. 77), and (2) Defendant's Motion for Summary Judgment (ECF No.

81).  For the reasons that follow, Plaintiffs' Motion for Partial Summary Judgment is denied and

Defendant's Motion for Summary Judgment is granted.

## I. FACTS

Plaintiffs filed this action on July 27, 2004, in the court of common pleas in Cuyahoga

County, Ohio.  (*See* State Compl., ECF No. 1-2.)  Defendant removed this action to the United

States District Court for the Northern District of Ohio on October 14, 2004.  (*See* Notice of

Removal, ECF No. 1.) Plaintiffs seek to recover the retirement savings they lost in a "ponzi-scheme" investment program involving the sale and "leaseback" of pay telephones, or Customer Owned Coin Operated Telephones ("COCOTs"). On April 5, 2000, Plaintiffs Clifford and Maxine Hardin both signed separate "COCOT Purchase Agreements" to purchase COCOTs from National Communications Marketing, Inc. ("NCMI"). (*See* COCOT Purchase Agreements attached as Ex. "B" to the Affidavit of Dinah Contino ("Contino Aff."), ECF No. 81-3.) The COCOTs were sold to the Hardins by Delbert Cogar (hereinafter, "Cogar"), an insurance salesman and sales associate for NCMI. (*See* IRA Simplifier, attached as Exhibit "A" to Contino Aff.) The "COCOT Purchase Agreements" signed by the Hardins and Cogar on April 5, 2000, clearly identify Cogar as an "Associate" of NCMI. (Contino Aff. ¶ 6.)

Under the COCOTs Purchase documents, the Hardins elected to lease the COCOTs to ETS Payphones, Inc. ("ETS"). (Contino Aff. ¶ 5.) Pursuant to the "leaseback" agreement, the COCOT payphone companies generally agreed to: (1) maintain and operate the phones; (2) make monthly payments to investors of $82 per phone, totaling 14.0% annually; (3) buy back the investor's payphone for the original purchase price any time after six months; and (4) at the end of the five-year contract, at the investor's option, renew the agreement or buy back the investor's payphones for the original purchase price. (*See* Telephone Equipment Lease Agreement, ECF No. 77-2 p.79-85.)

On the same day that the Hardins signed the NCMI "COCOT Purchase Agreements," the Hardins also signed an "IRA Simplifier Individual Retirement Account Application" from RTC. (*See* IRA Simplifier attached as Ex. "A" to the Contino Aff.) According to Kenneth J. Phelps, one of RTC's principals and former CEO, RTC is a trust company which provides fiduciary, investment

management, custody, safekeeping and trust and estate administrative services.  (*See* Excerpts from

Deposition of Kenneth J. Phelps, ("Phelps Tr.") at 17:20-23, ECF No. 43-7.)  The IRA applications,

each signed by Mr. and Mrs. Hardin, requested that RTC open separate self-directed IRA accounts

for them.  (*Id.*)  Both IRA applications listed NCMI as the Hardins' "Broker/Dealer" and Cogar as

NCMI's "Representative."  (*Id.*)  The "IRA Simplifier Account Applications" signed by Mr. and

Mrs. Hardin provided as follows:

> I expressly certify that I take complete responsibility for the type of
> investment instrument(s) I choose to fund my IRA and that the
> Custodian is released of any and all liability regarding the
> performance of any investment choice(s) I make. I, as the IRA
> Holder, assume complete responsibility for:
>    1. Determining that I am eligible for an IRA each year I make
> a contribution.
>    2. Insuring that all contributions I make are within the limits
> set forth by the tax laws.
>    3. The tax consequences of any contribution (including
> rollover contributions) and distributions.

(*See* IRA Simplifier Account Applications, attached as Ex. "A" to Contino Aff.)

The self-directed IRA Agreement, which was attached to the IRA Simplifier that the Hardins

signed, contained the following relevant provisions:

> 8.03 Representations and Responsibilities: . . . We [Reliance Trust
> Company] have no duty to determine whether your contributions or
> distributions comply with the [Internal Revenue] Code, regulations,
> rulings or this Agreement.
>                      * * *
> 8.05 Investment of Amounts in the IRA:
> a. Direction of Investment - You have exclusive responsibility for
> and control over the investment of assets in your IRA. . . . Depositor
> also has sole responsibility to determine the eligibility of both their
> contribution(s) and investment(s). . . . The Custodian has no duty to
> investigate or determine whether the contribution or investment is
> appropriate, qualified or permissible.
> b. Our Investment Powers and Duties - We shall have no discretion

> to direct any investment in your IRA. We assume no responsibility
> for rendering investment advice with respect to your IRA, nor will we
> offer any opinion or judgment to you on matters concerning the value
> or suitability of any investment or proposed  investment for  your
> IRA. . . .

(*See* IRA Simplifier Agreement attached as Ex. "A" to the Contino Aff.)

Concurrent with the signing of the IRA Applications for RTC, the Hardins each signed a

separate "Rollover Contribution Form" and "Investment Direction and Authorization Form." (*See*

Rollover Contribution Form, attached as Ex. "C" to the Contino Aff.; *see also* Investment Direction

and Authorization Form, attached as Ex. "D" to the Contino Aff.)  RTC was the IRA custodian that

held the Hardins' investments.  Prior to April 5, 2000, the Hardins had never heard of RTC and had

never spoken with anyone from RTC.  (*See* Maxine Hardin Depo.,11:4-16, 21-23; Clifford Hardin

Depo.,48:3 – 49:7, and 53:3 – 54:11; *see also*, Pls.' Reply to Def.s' Resp. in Opp'n to Pls.' Mot. for

Class Certification at 10, ECF No. 74.)

After the Hardins purchased the COCOT units for each of their IRA Accounts and leased

the COCOTs to ETS Payphones, ETS then made several lease payments to the Hardins' IRA

Accounts as provided in their lease agreements.  (Contino Aff. ¶ 8.)  The payments ended when

ETS filed for bankruptcy in September of 2000.  (Contino Aff. ¶ 8.)

On January 13, 2004, the United States Supreme Court held that COCOT investments were

"investment contracts" and thus, "securities" subject to Federal Securities Laws.  *See S.E.C. v.

Edwards*, 540 U.S. 389 (2004).

## II.  SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

-4-

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

Fed. R. Civ. P. 56(c).  Rule 56(e) specifies the materials properly submitted in connection with a motion for summary judgment:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein . . . .  The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or further affidavits.  When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denial of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.  If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed. R. Civ. P. 56(e).  However, the movant is not required to file affidavits or other similar materials negating a claim on which its opponent bears the burden of proof, so long as the movant relies upon the absence of the essential element in the pleadings, depositions, answers to interrogatories, and admissions on file.  *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943-44 (6th Cir. 1990).  A fact is "material" only if its resolution will affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standard.

Thus, in most civil cases the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict." *Id*. at 252.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989) (citing *Frito-Lay, Inc. v. Willoughby*, 863 F.2d 1029, 1034 (D.C. Cir. 1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus*, 801 F. Supp. 1, 4 (S.D. Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id*.

### III. LAW AND ANALYSIS

**A.     All of Plaintiffs' Claims Share the Same Factual Basis**

Count One of Plaintiffs' Second Amended Complaint alleges "violations" of O.R.C. § 1707.43. (Pl.'s Second Am. Compl. ¶¶ 58-65, ECF No. 21.) Section 1707.43 "Remedies of purchaser in unlawful sale" states in relevant part:

> (A) Subject to divisions (B) and (C) of this section, every sale or contract for sale made in violation of Chapter 1707. of the Revised Code, is voidable at the election of the purchaser. *The person making such sale or contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser*, in an action at law in any court of competent jurisdiction, upon tender to the seller in person or in open court of the securities sold or of the contract

-6-

> made, for the full amount paid by the purchaser and for all taxable
> court costs, unless the court determines that the violation did not
> materially affect the protection contemplated by the violated
> provision.

O.R.C. 1707.43 (emphasis added).  Section 1707.43 is only a "remedies" statute that provides for

the joint liability of persons who aid or participate in sales made in violation of other portions of the

Ohio Securities Act.  Accordingly,  § 1707.43 is not susceptible to being "violated." *See, e.g.*,

*Martin v. Stuebner*, 485 F. Supp. 88, 101 (S.D. Ohio 1979), *aff'd* 652 F.2d 652 (6th Cir. 1981)

(noting that O.R.C. § 1707.43 "is not punitive but simply permits the purchaser to rescind the

transaction and puts the parties in the position they were in before the contract was entered into").

Essentially, Plaintiffs allege that under O.R.C. § 1707.43(A), RTC is jointly and severally

liable with other persons whose actions were unlawful under the Ohio Securities Act because RTC

"'participated in or aided the seller' in selling the ETS securities."  (Pl.'s Second Am. Compl. ¶ 61.)

The specified violations of the Ohio Securities Act which RTC is alleged to have aided in Count

One of Plaintiffs' Second Amended Complaint are NCMI and Delbert Cogar's sale of unregistered

securities (COCOTs) to the Hardins, in violation of O.R.C. § 1707.44(C), when Cogar was

unlicensed to sell securities in violation of O.R.C. § 1707.44(A)(1).  (Pl.'s Second Am. Compl. ¶¶

54-61, 65.)

O.R.C. § 1707.44 provides in relevant part:

> (C) No person shall knowingly sell, cause to be sold, offer for sale,
> or cause to be offered for sale, any security which comes under any
> of the following descriptions:
>
> (1) Is not exempt under section 1707.02 of the Revised Code, nor the
> subject matter of one of the transactions exempted in section
> 1707.03, 1707.04, or 1707.34 of the Revised Code, has not been

registered by coordination or qualification, and is not the subject matter of a transaction that has been registered by description. . . .

O.R.C. § 1707.44 provides in relevant part:

(A) (1) No person shall engage in any act or practice that violates division (A), (B), or (C) of section 1707.14 of the Revised Code, and no salesperson shall sell securities in this state without being licensed pursuant to section 1707.16 of the Revised Code.

In Count Two, Plaintiffs allege RTC is liable for civil aiding and abetting because it allegedly "assisted ETS in facilitating the Ponzi Scheme." (Pls.' Second Am. Compl. ¶ 66-72.) In Count Three, Plaintiffs allege "Defendant conspired . . . to market, sell and otherwise participate in the illegal sale of ETS Payphones in violation of Ohio law and public policy, to fraudulently conceal unlawful activity, and to unjustly enrich itself at the expense of the Plaintiffs. . . ." (Pls.' Second Am. Compl. ¶ 74.) In Count Four, Plaintiffs allege Defendant is liable for fraudulent concealment in that Plaintiffs "reasonably relied upon the silence of RTC in electing to proceed with the purchase of ETS pay phones for their qualified retirement accounts." (Pls.' Second Am. Compl. ¶ 83.) All of these claims share the same factual basis, that is, the sale of COCOTs to the Hardins.

**B. Statute of Limitations Under O.R.C. § 1707.43(B)**

Defendant argues that all of Plaintiffs' claims are time barred by the two-year statute of limitations under O.R.C. § 1707.43(B). Under Ohio law, the statute of limitations for all claims arising from the sale of securities is the two-year statute of limitations found in O.R.C. § 1707.43(B) which provides,

No action for the recovery of the purchase price as provided for in this section, and no other action for any recovery based upon or arising out of a sale or contract for sale made in violation of Chapter 1707 of the Revised Code, shall be brought more than two years after the plaintiff knew, or had reason to know, of the facts by reason of

-8-

> which the actions of the person or director were unlawful, or more than five years from the date of such sale or contract for sale, whichever is the shorter period.

O.R.C. 1707.43(B).

The Sixth Circuit has held that "Ohio law is clear that . . . [when] fraud claims arise out of or are predicated on the sale of securities, they are governed by the specific statute of limitations set forth in Ohio Rev. Code § 1707.43(B) . . . ." *Wyser-Pratte Mgmt. Co. v. Telxon Corp.*, 413 F.3d 553, 561 (6th Cir. 2005); *see also Hater v. Gradison*, 101 Ohio App. 3d 99, 114 (1995) (applying two-year statute of limitations to common law fraud claims which "arise essentially from, and are thus predicated upon, the sale of securities"). As previously discussed, there are four counts in Plaintiffs' Second Amended Complaint, each of which arose from the same alleged factual basis, that is, the sale of COCOT investments to the Hardins in violation of the Ohio Securities Act. Therefore, each count of Plaintiffs' Complaint is controlled by the two year limitations period in O.R.C. § 1707.43.

### 1. The Constructive Notice Standard

As the court noted in *Wyser-Pratte Mgmt. Co.*, constructive notice is sufficient to start the two-year period under O.R.C. 1707.43(B). While Ohio courts "have not discussed what is required to establish constructive notice under this provision," the Sixth Circuit has construed this provision. *Wyser-Pratte Mgmt. Co.* 413 F.3d at 561 (citing *Gounaris v. Apple*, 1990 Ohio App. LEXIS 896 (Ohio App. Mar. 6, 1990)). In *Wyser-Pratte Mgmt. Co.*, the Sixth Circuit dealt with the issue of what constitutes constructive notice under O.R.C. § 1707.43(B). The court held that "because Ohio has adopted a limitations period specific to claims arising out of the sale of securities, . . . the Ohio

courts would apply a standard consistent with the 'inquiry notice' standard applicable to similar federal securities fraud claims." *Id.* at 562.

The Sixth Circuit explained that under the inquiry notice standard, "knowledge of suspicious facts – 'storm warnings,' they are frequently called – merely triggers a duty to investigate, and that the limitation period begins to run only when a reasonably diligent investigation would have discovered the fraud." *Id.* (quoting *New England Health Care Employees Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003). Therefore, the two-year limitations period under O.R.C. §1707.43(B) begins to run after the duty to investigate is triggered and a reasonably diligent investigation would have discovered the "facts by reason of which the actions of the person or director were unlawful." O.R.C. §1707.43(B); *see also Wyser-Pratte Mgmt. Co.*, 413 F.3d at 562; *Kondrat v.* Morris, 118 Ohio App. 3d 198, 206 (1997) ("plaintiffs must bring their action . . . two years from the time they knew or should have known the facts underlying their complaint"); *Benak v. Alliance Capital Mgmt. L.P.*, 349 F. Supp. 2d 882, 887 (D. N.J. 2004) ("Under the inquiry notice standard, the limitations period commences when the plaintiffs, in the exercise of reasonable diligence, should have discovered the basis for their claim.")

**2.      Accrual of the Statute of Limitations**

Inquiry notice is an objective determination. *See Benak*, 349 F.Supp.2d at 887 (noting that the test "is an objective one" focusing on what "a reasonable investor of ordinary intelligence would have discovered" with "reasonable diligence"). Therefore, in determining the accrual point for the two-year limitations period, the question before the court is not when did the Hardins actually discover the alleged facts upon which they base their claim, but rather when the Hardins should have discovered these alleged facts had they exercised reasonable diligence to investigate after

being placed on inquiry notice.  Plaintiffs filed this action on July 27, 2004, in the court of common pleas in Cuyahoga County, Ohio.  (*See* State Compl., ECF No. 1-2.)  Therefore, if a reasonably diligent investigation would have discovered the underlying facts for Plaintiffs' claims prior to July 27, 2002, Plaintiffs' claims are barred by the statute of limitations.

In the instant case, the parties disagree as to whose unlawful actions the Plaintiffs should have discovered in order to start the two-year limitations period under O.R.C. §1707.43(B). Defendant argues that the "person or director" as that term is used in §1707.43(B) is the person directly liable for the primary violations at issue under O.R.C. § 1707.44 (e.g., the sale of unregistered securities by unlicensed persons) and therefore, the limitations period began to run on Plaintiffs' claims when the Hardins should have discovered that the actions of Cogar were unlawful. (*See* Def.'s Br. in Supp. of Mot. for Summ. J. 19-20, ECF No. 81-2.)  Plaintiffs maintain that Defendant misinterprets § 1707.43(B) and that the inquiry notice component to §1707.43(B) in this case applies not to the actions of Cogar (the person selling unregistered securities), but to the actions of the "aiders and participators," in this case, RTC.   (*See* Pls.' Br. in Opp'n 17, 19, 20, ECF No. 93-1.)

For reasons discussed below, this court finds that under either interpretation of §1707.43(B), a reasonably diligent investigation would have discovered the underlying facts upon which Plaintiffs claims are based more than two years before this suit was filed.  O.R.C. §1707.43(B); *see also Wyser-Pratte Mgmt. Co.* 413 F.3d at 562.  When viewing the evidence in a light most favorable to the non-moving party, it is clear that prior to July 27, 2002, Plaintiffs, in the exercise of reasonable diligence, either did, or should have discovered the alleged factual basis for the claims in their Second Amended Complaint.

-11-

**C.    Application of the Statute of Limitations**

**1.    Count One for Illegal Sales of a Security**

The specified violations of the Ohio Securities Act which RTC is alleged to be jointly and severally liable for in Count One of Plaintiff's Second Amended Complaint are NCMI and Delbert Cogar's sale of unregistered securities (COCOTs) to the Hardins, in violation of O.R.C. § 1707.44(C), when Cogar was unlicensed to sell securities in violation of O.R.C. § 1707.44(A)(1). (Pl.'s Second Am. Compl. ¶¶ 54-61, 65.)

Before July 27, 2002, Plaintiffs had constructive notice of the facts that ETS had engaged in a "Ponzi" scheme, that the COCOTs were alleged to be unregistered securities, and that Cogar was unlicensed to sell securities, as shown by the available information discussed below.

**a.    SEC Litigation Releases**

In an October 10, 2000 Litigation Release, the Securities and Exchange Commission ("SEC") publicly announced a lawsuit against ETS regarding the COCOT investments.  *See, e.g.*, SEC Litigation Release No. 16760, October 10, 2000, describing the Complaint as alleging that ETS had "promoted a massive fraudulent scheme."  (*See* Ex. "F" to Contino Aff.)

On November 30, 2000, the SEC issued another litigation release announcing the entry of a preliminary injunction against ETS for Securities Act violations.  (*See* Ex. "G" to Contino Aff.) In the November 30, 2000 Litigation Release the SEC announced:

> In its ruling of November 20, 2000, the Court found that Edwards and ETS fraudulently sold unregistered securities in the form of investment contracts in the form of coin-operated telephones in units including a telephone, site lease, lease/back agreement and buy/back agreement. The Court found that ETS falsely advertised in sales brochures the "profitability" of payphones and encouraged investors to "watch the profits add up," while in reality ETS always lost money

-12-

> on its payphone operations. The Court concluded that because
> revenue from payphone operations never covered operating
> expenses, ETS had to attract an ever expanding number of investors
> to meet its obligations to the existing investors and that none of this
> information was disclosed to investors.

Additionally, the November 30, 2000 Litigation Release announced that the SEC had filed an action against ETS in the United States District Court for the Northern District of Georgia.  In 2000, the Northern District of Georgia issued a published opinion in which it described the SEC's claims against ETS as alleging that ETS COCOT investments constituted a "fraudulent and unregistered offering of securities in violation of the registration and anti-fraud provisions of the federal securities laws." *SEC v. ETS Payphones, Inc.*, 123 F. Supp.2d 1349, 1351 (N.D. Ga. 2000). The SEC Litigation Releases were available at the SEC's website at http://www.sec.gov.  (*See* Contino Aff. ¶ 10.)

The SEC Litigation Releases and court opinions demonstrate that there were sufficient storm warnings in 2000 to place Plaintiffs on inquiry notice that ETS had allegedly engaged in a "Ponzi" scheme and that the COCOTs were believed to be unregistered securities.  SEC litigation releases and filings have been "deemed sufficient storm warnings to affirm dismissal of securities fraud claims for untimeliness." *Benak*, 349 F. Supp. 2d at 887 (citing *In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1325 (3d Cir. 2002)); *see e.g.*, *De la Fuente v. DCI Telecomm., Inc.*, 206 F.R.D. 369, 382 (S.D.N.Y. 2002) (finding that SEC release constituted a key "storm warning" placing plaintiff on inquiry notice of securities claim).

### b.      Attorney Joel Goodman's Letter to the Hardins in 2000

Over three years before Plaintiffs filed this lawsuit, the Hardins received a letter from Attorney Joel Goodman (hereinafter, "Goodman") dated December 13, 2000.  (*See* Clifford Hardin Depo. 82:16 - 83:20, ECF No. 60.)  In his letter offering legal services to the Hardins, Goodman specifically advised the Hardins that "the SEC has filed an enforcement action against ETS alleging that ETS constituted a fraudulent Ponzi scheme in which the payments received by you consisted of payments from other investors, not returns on ETS' payphone business."  ("Goodman Letter" attached as Ex. "X" to Clifford Hardin's Deposition, ECF No. 60-26.)  The Goodman letter also specifically warned the Hardins to "act quickly, however, because statutes of limitation can be short in securities cases."  (*Id.*)

The Goodman letter specifically advised the Hardins of the SEC's position that the COCOTs were merely a Ponzi scheme and that they were securities requiring registration.  The letter also put the Hardins on actual notice of the SEC action against ETS discussed above and provided actual notice that they risked their claims being time barred by failure to act promptly.

### c.      Earlier Lawsuits Against RTC and Others

Other COCOT investors asserted claims against RTC in Ohio for fraud, conspiracy, and alleged participation in a "Ponzi" scheme more than two years before Plaintiffs filed this action. For example, on October 19, 2001, Opal Burns filed suit in the Court of Common Pleas, Summit County, Ohio, against RTC.  (*See* Burns Compl. at Ex. "I" to the Contino Aff.)  Burns made claims against RTC alleging that RTC participated in a conspiracy with ETS, NCMI, and others; that RTC failed to make disclosures about the ETS COCOT investments and that such failure constituted fraud; and that  RTC participated with ETS as part of "fraudulent 'Ponzi' Schemes."  (*See id.* ¶¶ 11,

13, 18, 27, 30.)  Seven other COCOT related lawsuits in other jurisdictions also named RTC as a defendant and each of these lawsuits was filed more than two years before the Hardins filed their lawsuit against RTC.  (*See* Decl. of Dinah Contino, ¶¶ 15, 16; ex )  William Yost filed a lawsuit in February 2002, in Stark County, Ohio, naming NCMI as a defendant and alleging that NCMI and ETS were both fraudulent Ponzi schemes and that the COCOTs were unregistered securities sold by unlicensed persons.  (*See* Yost Compl. attached as Ex. "J" to the Contino Aff.)

The lawsuits discussed above were all filed more than two years before the Hardins filed suit which shows that the Hardins should have discovered the purported basis for their claims upon a reasonably diligent inquiry more than two years prior to this suit being filed.  Moreover, the lawsuits discussed above were matters of public record available to the Hardins.  *See e.g.*, *Benak*, 349 F. Supp. 2d at 888 (information that is "widespread within the public domain" is sufficient to put plaintiffs on inquiry notice).  Though Plaintiffs argue that "[t]here is no evidence that the Hardins ever possessed or had knowledge of these materials" (Pls.' Opp'n to Def.'s Mot. for Summ. J. at 23) and that "Plaintiffs are elderly, retirees with high school educations . . . [and] a broken computer," (*Id.* at 24) the inquiry notice standard is an objective standard.  *See id.* at 887; *see also In re NAHC Sec. Litig.*, 306 F.3d 1314, 1325 (2002) (noting that "courts can impute knowledge of public information without inquiring into when, or whether, individual shareholders actually knew of the information in question").

> **d.**      **Other Available Sources of Information**

In addition to the information described above, there were other items of notice available to the Hardins in 2000 and 2001, including: (1) a December 19, 2000 "Seniors Cry Foul" article in

The Palm Beach Post regarding ETS;[1] (2) an announcement on December 5, 2000, by the California Division of Corporations of a twenty state sweep of COCOT investment schemes (naming ETS and NCMI);[2] and (3) an announcement on March 13, 2001, by the North American Securities Administrators (NASA) of a joint action by securities regulations in twenty-five states and the District of Columbia against issuers and marketers of telephone lease contracts.[3]

> **e.** **Ohio Division of Securities Cease and Desist Order For Delbert Cogar**

On June 3, 2002, more than two years before this suit was filed, the Ohio Division of Securities issued a Cease and Desist Order for Delbert Cogar, in which the Hardins are identified by name as follows:

> (11) On or about April 5, 2000, Cogar sold, directly or indirectly, C. Hardin a pay telephone unit investment in the amount of $7,000.00;
> (12) On or about April 5, 2000, Cogar sold, directly or indirectly, M. Hardin a pay telephone unit investment in the amount of $7,000.00;
> * * *
> (21) The pay telephone units discussed in Paragraphs (7) through (12) fell within the definition of "security" as that term is defined in R.C. 1707.01(B);
> * * *
> (26) Cogar, as described in Paragraph (10) through (16), sold, directly or indirectly, securities through a dealer, CMA or NCMI, without having been licensed by the Division of Securities as a salesperson, and therefore, in violation of R.C. 1707.44(A)(1);

(Delbert R. Cogar Cease and Desist Order, attached to the Affidavit of Dennis Ginty ("Ginty Aff."), ECF No. 81-21.)

---

[1] *See* Ex. "J" to the Contino Aff.

[2] *See id.*

[3] *See id.*

Furthermore, Cogar's licensure status was readily available to the public by calling the Division of Securities Investor Protection Hotline. (*See* Ginty Aff. ¶ 4.) Pronouncements by a division of securities have been held to constitute constructive notice to investors for statute of limitations purposes. *See, e.g.*, *Miller v. Nationwide Life Ins. Co.*, 391 F.3d 698 (5th Cir. 2004) (holding that publication placed investors on constructive notice of violations of securities law). Therefore, Plaintiffs had constructive notice that Delbert Cogar was not licensed to sell securities more than two years before they filed this action.

> **2.    Plaintiffs' Claims in Count One are Barred by the Statute of Limitations Under Either Defendant's or Plaintiffs' Interpretation of O.R.C. § 1707.43(B)**

Under Defendant's reading of O.R.C. § 1707.43(B), the limitations period began to run on Plaintiffs' claims when the Hardins should have discovered that the actions of Cogar were unlawful. (*See* Def.'s Br. in Supp. of Mot. for Summ. J. 19-20, ECF No. 81-2.) Considering the SEC Litigation Releases, the Goodman Letter, the other lawsuits against RTC, and the cease and desist order, as discussed above, Plaintiffs had constructive notice of the facts that ETS had engaged in a "Ponzi" scheme, that the COCOTs were alleged to be unregistered securities, and that Cogar was unlicensed to sell securities, before July 27, 2002. Accordingly, this court finds that Plaintiffs had constructive notice that Cogar's actions were unlawful more than two years before Plaintiffs filed this action. Therefore, Plaintiffs claims are barred by the statute of limitations if Defendant's interpretation of O.R.C. § 1707.43(B) is adopted by this court.

Under Plaintiffs' interpretation, however, the inquiry notice component to O.R.C. § 1707.43(B) would apply not to the actions of Cogar (the person selling unregistered securities), but to the actions of the "aiders and participators," in this case, RTC. (*See* Pls.' Br. in Opp'n 17, 19, 20, ECF No. 93-1.) Section 1707.43 states in relevant part that "[t]he person making such sale or

contract for sale, and every person that has participated in or aided the seller in any way in making such sale or contract for sale, are jointly and severally liable to the purchaser. . . ."  Therefore, if before July 27, 2002, the Hardins had constructive notice of the fact that RTC "participated" or "aided the seller [of the COCOTs] in any way,"  then Plaintiff's claims are time barred.

This court finds that prior to July 27, 2002, Plaintiffs, in the exercise of reasonable diligence, should have discovered that RTC "participated" or "aided the seller" of the COCOTs in someway.  In fact, Plaintiffs had actual notice.  Plaintiffs knew that RTC was the custodian of their self-directed IRA accounts as of April 5, 2000, when the Hardins signed their IRA Account Applications.  (*See* IRA Simplifier, attached as Ex. "A" to the Contino Aff.; Maxine Hardin Depo. 9:20-11:20, 12:23-14:22, ECF No. 60.)  On that same date, April 5, 2000, Mr. and Mrs. Hardin each signed an Investment Direction and Authorization Form, directing RTC to purchase COCOTs for their IRA accounts.  (*See* Investment Direction and Authorization Forms attached as Ex. "D" to the Contino Aff.)  As Plaintiffs point out in their motion for partial summary judgment, the term "participation" in O.R.C. § 1707.43 is broad in scope given the "in any way" language.  (Pls.' Mot. for Partial Summ. J. at 16, ECF No. 77.)  RTC's role in purchasing the COCOTs for the Hardins' accounts is sufficient to form a possible basis for liability under O.R.C. § 1707.43.  *See Federated Mgmt. Co. v. Coopers & Lybrand*, 137 Ohio App. 3d 366, 392 (Ohio Ct. App. 2000) ("participating in the sale or aiding the seller in any way is sufficient to form a basis for liability under R.C. 1707.43.")  Accordingly,  Plaintiffs had actual notice that RTC had "participated" or "aided the seller" of the COCOTs in someway, more than two years before filing the instant action.  Therefore, Plaintiffs' claims as alleged in Count One are barred by the statute of limitations under either Plaintiffs' or Defendant's reading of O.R.C. § 1707.43(B).

-18-

### 3.      Count Two for Civil Aiding and Abetting and Count Three for Civil Conspiracy

In Count Two, Plaintiffs allege that RTC is liable for civil aiding and abetting because it allegedly "assisted ETS in facilitating the Ponzi Scheme." (Pls.' Second Am. Compl. ¶ 71.)  In Count Three, Plaintiffs allege RTC is liable for civil conspiracy because it "conspired to gather [sic] and, with other persons, known and unknown . . . to market, sell and otherwise participate in the illegal sale of ETS Payphones in violation of Ohio Law . . . ." (*Id.* ¶ 74.)  These claims share the same factual basis as the allegations contained in Count One, that is,  the sale of COCOTs to the Hardins and RTC's participation.  Plaintiffs had constructive notice of the facts underlying these claims more than two years prior to filing this action, as discussed above.  Therefore, for the same reasons that Plaintiffs' claims in Count One are barred by the statute of limitations, Plaintiffs' claims in Counts Two and Three are likewise barred.

### 4.      Count Four for Fraudulent Concealment

Plaintiffs allege that they "reasonably relied upon the silence of RTC in electing to proceed with the purchase of ETS pay phones for their qualified retirement accounts." (Pls.' Second Am. Compl. ¶¶ 80, 83.)  The Hardins' fraudulent concealment claims are based entirely on RTC's silence rather than on any alleged reliance on oral or written misrepresentations by or about RTC.  (*See* Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Class Certification, 8, 17.)  The factual basis for the Hardins' fraudulent concealment claim is RTC's alleged failure to communicate to the Plaintiffs that RTC had a business relationship with NCMI and ETS, that the COCOTs would incur tax liability and therefore were not proper investments for their IRA, and that the COCOTs were unregistered securities. (See *Id.* at 16-17.)

More than two years before this suit was filed, the Hardins had actual notice that RTC had a business relationship with NCMI and ETS, as evident by the fact that Cogar, an NCMI representative, handled all of the paperwork involved regarding the sale of the COCOTs to the Hardins, the leases of the COCOTs to ETS, and the opening of IRAs with RTC to hold the Hardins' COCOTs investments.  On April 5, 2000, Plaintiffs Clifford and Maxine Hardin both signed separate "COCOT Purchase Agreements" to purchase COCOTs from NCMI.  (*See* COCOT Purchase Agreements attached as Ex. "B" to the Contino Aff.)  Under the COCOTs Purchase Agreements, the Hardins elected to lease the COCOTs to ETS.  (Contino Aff. ¶ 5.)  That same day, the Hardins also signed an "IRA Simplifier Individual Retirement Account Application" from RTC.  (*See* IRA Simplifier attached as Ex. "A" to the Contino Aff.)  The IRA applications requested that RTC open separate self-directed IRA accounts for the Hardins and both IRA applications listed NCMI as the Hardins' "Broker/Dealer" and Cogar as NCMI's "Representative." (*Id.*) Concurrent with the signing of the IRA Applications for RTC, the Hardins each signed a separate "Rollover Contribution Form" and "Investment Direction and Authorization Form." (*See* Rollover Contribution Form, attached as Ex. "C" to the Contino Aff.; *see also* Investment Direction and Authorization Form, attached as Ex. "D" to the Contino Aff.)  Prior to April 5, 2000, the Hardins had never heard of RTC and had never spoken with anyone from RTC.  (*See* Maxine Hardin Depo.,11:4-16, 21-23; Clifford Hardin Depo.,48:3 – 49:7, and 53:3 – 54:11; *see also*, Pls.' Reply to Def.s' Resp. in Opp'n to Pls.' Mot. for Class Certification at 10, ECF No. 74.)  Therefore, Plaintiffs only knowledge of RTC came from Cogar, an NCMI representative.  Accordingly, Plaintiffs had actual notice that RTC had a business relationship with NCMI and ETS.

-20-

Additionally, more than two years before this suit was filed, the Hardins had actual notice that RTC did not, and would not, provide the investment advice, warnings or other disclosures that they contend RTC should have made.  The self-directed IRA Agreement, which was attached to the IRA Simplifier that the Hardins signed, specifically states:

> 8.03 Representations and Responsibilities: . . . We [Reliance Trust Company] *have no duty* to determine whether your contributions or distributions comply with the [Internal Revenue] Code, regulations, rulings or this Agreement.
>
> * * *
>
> 8.05 Investment of Amounts in the IRA:
> a. Direction of Investment - You have exclusive responsibility for and control over the investment of assets in your IRA. . . . *Depositor also has sole responsibility to determine the eligibility of both their contribution(s) and investment(s). . . . The Custodian has no duty to investigate or determine whether the contribution or investment is appropriate, qualified or permissible.*
> b. Our Investment Powers and Duties - We shall have no discretion to direct any investment in your IRA. *We assume no responsibility for rendering investment advice with respect to your IRA, nor will we offer any opinion or judgment to you on matters concerning the value or suitability of any investment or proposed  investment  for  your IRA. . . .*

(*See* IRA Simplifier Agreement attached as Ex. "A" to the Contino Aff.) (Emphasis added.)

Accordingly, Plaintiffs had actual notice of RTC's alleged failure to communicate to the Plaintiffs that "the COCOTS [sic] would incur tax liability and therefore were not proper investments for their IRA, which are designed to hold assets that are tax deferred . . . [and] that the COCOTS were unregistered securities." (*See* Pls.' Reply to Def.'s Opp'n to Pls.' Mot. for Class Certification, 16-17.)  Consequently, Plaintiffs' fraudulent concealment  claim is barred by the statute of limitations as Plaintiffs had actual notice of the facts upon which the claim is based, more than two years before they filed this action.

-21-

**5.**    **Summary**

This court has found that more than two years before Plaintiffs filed this action, Plaintiffs had constructive notice, or actual notice, of the alleged factual basis for each of the claims presented in their Second Amended Complaint.  Consequently, under O.R.C. § 1707.43(B), the statute of limitations on the Hardins' claims against RTC accrued more than two years before this suit was filed.  Plaintiffs' claims are therefore time barred.  Accordingly, Defendant's Motion for Summary Judgment is granted.  (ECF No. 81.)

As the court has found that all of Plaintiff's claims are barred by the statute of limitations and that Defendant's Motion for Summary Judgment must be granted, it is unnecessary for the court to address the other arguments presented by Defendant in support of its motion, and Plaintiffs' response to those arguments in their opposition.

## IV. CONCLUSION

For the reasons set forth above, Defendant's Motion for Summary Judgment is granted  (ECF No. 81) and Plaintiffs' Motion for Partial Summary Judgment is denied  (ECF No. 77).

IT IS SO ORDERED.


/s/*SOLOMON OLIVER, JR.*
UNITED STATES DISTRICT JUDGE


September 28, 2006